**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **OSCAR SALINAS** | § | |
| | § | |
| **V.** | § | **A-11-CA-559-LY** |
| | § | |
| **TEXAS WORKFORCE COMM'N, et al.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion to Dismiss, filed on April 9, 2013 (Dkt. # 15), Plaintiff's Response, filed on April 22, 2013 (Dkt. # 20) and Defendant's Reply, filed on April 26, 2013 (Dkt. # 21). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges

**I.   GENERAL BACKGROUND**

Plaintiff Oscar Salinas ("Salinas") was employed as a part-time English professor with Houston Community College System during the Spring semester of 2010. After Salinas was laid off, he filed a claim with the Texas Workforce Commission ("TWC") to collect unemployment benefits pursuant to the Texas Unemployment Compensation Act ("Act"). On November 5, 2010, the TWC notified Salinas that he had been paid unemployment benefits to which he was not entitled, causing an overpayment of $422.00 in unemployment benefits and ordered him to repay that amount, pursuant to Section 212.006[1] of the Act. See Exh. A-10 to Complaint. The TWC had determined

---

[1]Section 212.006 of the Act provides that benefits paid to a claimant "that are not in accordance with the final decision shall be. . . refunded by the claimant to the commission" or "deducted from future benefits." TEX. LAB. CODE § 212.006(a) (Vernon 2006).

that Salinas had been erroneously paid unemployment benefits for the period from March 14, 2010, through March 20, 2010, when the college was closed for Spring Break.[2]  Also on November 5, 2010, the TWC issued a Determination that Salinas was ineligible to receive further unemployment benefits beginning on March 14, 2010, because he had failed to report to the TWC Tele-center as required by Section 207.021(a)(1)[3] of the Act.  See Exh. A-8 to Complaint.  On November 17, 2010, the TWC issued two more Determinations, notifying Salinas that (1) his base period wages had to be recalculated because "[o]ur investigation found that you have reasonable assurance of returning to work for a school in the following school year or term or holiday period" and (2) it would cease paying benefits for the period beginning on October 31, 2010, and ending on November 13, 2010, because Salinas had failed to report to the TWC Tele-center as instructed. See Exh. A-12 & Exh. A-14 to Complaint.

After Salinas appealed the TWC's Determinations, the Appeals Tribunal reversed its earlier decisions and found that Salinas was in compliance with the Act and did not owe the TWC any overpaid unemployment benefits.  See Exh. A-20 & A-22 to Complaint.  Subsequently, however, the TWC reviewed Salinas' case once again and issued a Determination that Salinas had indeed been overpaid $193.00 in unemployment benefits for the period of March 14, 2010, through March 20, 2010, when the college was closed for Spring Break, pursuant to Section 207.041 of the Act.  Exh.

---

[2]Section 207.041(d) of the Act provides that "[b]enefits are not payable to an individual based on services performed for an educational institution for a week that begins during an established and customary vacation period or holiday recess if: (1) the individual performed the services in the period immediately before the vacation period or holiday recess; and (2) there is a reasonable assurance that the individual will perform the services in the period immediately following the vacation period or holiday recess." TEX. LAB. CODE § 207.041(d) (Vernon 2006).

[3]Section 207.021(a)(1) of the Act requires that in order to be eligible for benefits, the claimant must register for work at an employment office and continue to report to the employment office.  TEX. LAB. CODE 207.021(a)(1).

A-24 to Complaint.  The Appeal Tribunal and the Commission affirmed the decision. Exh. D-1 &
Exh. K to Complaint.  Salinas did not appeal the Commission's decision, thereby making it the Final
Decision of the TWC.  *See* Tex. Lab. Code § 212.153 ("A decision of the commission becomes
final 14 days after the date the decision is mailed unless before that date . . .a party to the appeal files
a written motion for rehearing.").

Instead of exhausting his administrative remedies and requesting a rehearing with the
Commission and thereafter seeking judicial review in state court,[4] Salinas decided to "make a federal
case out of it" and, on July 5, 2011, he filed this lawsuit against the TWC and nine of its employees
(including TWC Appeal Tribunal Commissioners, Appeal Hearing Officers, supervisors and claims
investigators).  Salinas' Complaint alleges state law claims of conspiracy, intentional infliction of
emotional distress, and negligence per se, as well as a federal due process claim under the Fourteenth
Amendment.  Salinas also requests that the Court issue a declaratory judgment that the Defendants
have established and maintained "a policy, practice or custom of demanding repayment of benefits
without evidence that the repayments are owed in the first place." Complaint at ¶ 78.  Salinas alleges
"that TWC personnel conspired to use unemployment benefits statutes and appeal procedures to
subject him to harassment." Complaint at ¶ 6.  Salinas further alleges that "Defendants engaged in
a conspiracy of harassment with the intention of inflicting emotional distress."  Complaint at ¶ 61.
As an example, Salinas alleges that "[i]n flooding him with bogus Determinations– eight in all,
seven of them regarding the same March 14, 2010, through March 20, 2010 week– defendants meant
to make Plaintiff so confused, frustrated, and angry that he would not be able to cope with the

---

[4]A claimant may appeal the Commission's decision by filing a written motion for a hearing
within 14 days after the date of the decision. Tex. Lab. Code § 212.153 (Vernon 2006).  Thereafter,
a claimant may appeal the Commissioner's Final Decision by seeking judicial review in state court.
Tex. Lab. Code § 212.202, *et seq*.

pressure." Complaint at ¶ 62. "The experience took both an emotional and physical toll. The stress to which plaintiff is being subjected is taking its toll in the form of an exacerbated case of eczema." Complaint at ¶ 63. Additionally, Salinas alleges that Defendants "are grossly negligent in participating in a conspiracy to demand $193 in benefits overpaid . . . ." Complaint at ¶ 67. Salinas also contends that the Defendants denied him "his right to a fair and meaningful hearing" under the Fourteenth Amendment. Complaint at ¶ 69.

Defendants have now filed the instant Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Salinas' case should be dismissed in its entirety.

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. See FED. R. CIV. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.), *cert. denied*, 534 U.S. 993 (2001).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*. When a court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555 (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. See *Id.* at 555 & n. 3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual

underpinnings. See *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").

## III. ANALYSIS

Defendants argue that Salinas' case should be dismissed under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the following grounds: (1) the TWC and Individual Defendants in their official capacity have immunity from suit under the Eleventh Amendment, and the Individual Defendants in their individual capacity have qualified immunity; (2) lack of proper service of process; (4) lack of standing; and (5) failure to state a claim upon which relief may be granted. The Court addresses the issue of subject matter jurisdiction first, as without it, the Court may not proceed. See *Jasper v. FEMA*, 414 F. App'x 649, 651 (5th Cir.) ("Because a federal court must determine whether jurisdiction is proper prior to addressing the merits of a case, a district court must first determine if [an FTCA exception applies]."), *cert. denied*, 132 S.Ct. 108 (2011).

## A.    The TWC and the Eleventh Amendment

As noted above, Salinas filed this lawsuit after the TWC issued a decision that he owed the agency $193.00 in overpaid unemployment benefits. Specifically, Salinas alleges that "TWC personnel conspired to use unemployment benefits statutes and appeal procedures to subject him to harassment." Complaint at ¶ 6. Salinas further alleges that Defendants "engaged in a conspiracy of harassment with the intention of inflicting emotional distress" and were guilty of negligence per se. Complaint at ¶ 61 & 64. Finally, Salinas alleges that he was denied "his right to a fair and meaningful hearing" in violation of the Fourteenth Amendment. Thus, in essence, Salinas is seeking judicial review of the TWC's decision in this case.[5]

_____

[5]As noted, Salinas filed this lawsuit in Federal Court instead of exhausting his administrative remedies with the TWC and thereafter seeking judicial review in state court.

"The Eleventh Amendment prohibits a private citizen from bringing suit against a state in federal court unless the state consents." *Daigle v. Gulf State Utilities Company, Local Union Number 2286, et al.*, 794 F.2d 974, 980 (5th Cir.), *cert. denied*, 479 U.S. 1008 (1986). This includes suits against a state agency because a suit against a state agency "is a suit against the state . . . ." *Id.* The TWC is an agency of the State of Texas and, therefore, a suit against the TWC is a suit against the State of Texas. *Pillot v. Texas Emp't Comm'n*, 1993 WL 14525 at* 1 (5th Cir. Jan. 21, 1993) (citing *Daigle*, 794 F.2d at 980). Accordingly, Salinas' claims against the TWC are barred by the Eleventh Amendment unless Texas has waived its sovereign immunity. *Daigle*, 794 F.2d at 980.

While the State of Texas provides for judicial review of the TWC's decision in its courts, "there is nothing to indicate that Texas has waived its immunity from suit in federal court." *Id.* Accordingly, any claims against the TWC are barred under the Eleventh Amendment. *See Id.* (holding that claims against TEC, predecessor to TWC, were barred under the Eleventh Amendment); *Pillot*, 1993 WL 14525 at * 1 (same); *Martinez v. Tex. Workforce Comm'n*, 2011 WL 5827264 at * 2 (W.D. Tex. Nov. 18, 2011) (Eleventh Amendment prohibited § 1981 claims against TWC); *Jones v. Performance Serv. Integrity and Tex. Workforce Comm'n,* 492 F. Supp.2d 590, 598 (N.D. Tex. 2007) (holding that ADEA, retaliation, defamation and IIED claims were barred under Eleventh Amendment); *Beene v. Aramark Healthcare Support Services, Inc.*, 2007 WL 1468705 at *3 (N.D. Tex. May 17, 2007) (holding that *pro se* plaintiff's lawsuit seeking review of denial of unemployment benefits against TWC was barred by the Eleventh Amendment). Based upon the foregoing, the TWC should be dismissed from this lawsuit.

**B.**     *Ex Parte Young* **and the Individual Defendants**

The Eleventh Amendment "generally precludes actions against state officers in their official capacities." *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004). However, the Supreme Court's decision in *Ex parte Young* created an exception for claims for prospective

injunctive relief.  209 U.S. 123 (1908).  The *Ex parte Young* doctrine "ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).  For *Ex parte Young* to apply, the "suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992).  The Supreme Court recently explained that to avoid an Eleventh Amendment bar by means of *Ex parte Young*, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, – U.S. –, 131 S.Ct. 1632, 1639 (2011) (quoting *Verizon Md. Inc. v. Pub. Svc. Comm'n.*, 535 U.S. 635, 645 (2002) (internal citation and quotation marks omitted)).

The Court finds that *Ex parte Young* does not apply in this case.  First, the Court notes that *Ex parte Young* does not apply to any of Salinas' state law claims.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (holding that *Ex parte Young* is inapplicable in a suit against state officials on the basis of state law).  With regard to Salinas' federal constitutional claim, despite Salinas' back-peddling in his Response Brief, his lawsuit focuses primarily on monetary damages in the form of actual, exemplary, compensatory, special, general and punitive damages, not prospective injunctive relief.  *See* Complaint at ¶ 60, 63, 68, 80 & 81.  While his request that "the court should order additional relief, including but not limited to such procedures as may be necessary to determine the scope and effect of such due process violations on individuals other than plaintiff, and award appropriate relief to such persons," Complaint at ¶ 79, could be construed as a request for injunctive relief, he goes on to request only monetary damages in the very next paragraph:

> For the unjust material loss and the duress to which he has been subjected, Plaintiff is entitled to compensatory and exemplary damages.  Said relief should include expense of litigation, compensation for inconvenience, and other actual expenses not

recoverable as compensatory damages, all with prejudgment and postjudgment interest, as well as reasonable attorney's fees.

Complaint at ¶ 80.  As the Supreme Court has succinctly stated:

> Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant. This is true if the relief is expressly denominated as damages. It is also true if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else.

*Papasan v. Allain*, 478 U.S. 265, 278 (1986).  Based upon the foregoing, the Court finds that *Ex parte Young* is inapplicable to this case, and Salinas' claims against the Individual Defendants in their official capacity are barred by the Eleventh Amendment.

## C.    Procedural Due Process Claim under 42 U.S.C. § 1983

Salinas alleges that the Individual Defendants denied him the right to a "fair and meaningful hearing" in violation of his right to procedural due process under the Fourteenth Amendment. Complaint at ¶ 69.  Although Salinas does not dispute that he was given notice and had a hearing before the TWC, Salinas nevertheless alleges that the was denied due process because: (1) TWC Hearing Officer Rose Iglesias "essentially lied when she said that testimony showed plaintiff had worked during Christmas break;" (2) Hearing Officer Pete Laurie "knew the whole time that defendants White, Sells and Crampton had deliberately created a false record of plaintiff's failure to call [the] Tele-center;" (3) Hearing Officer Elaine Turner "created an appeal that plaintiff never filed;" and (4) Appeals Tribunal Commissioners Tom Pauken and Andres Alcantar's "affirmation of defendant Hearing Officer Turner's decision is simply the last event in a series of events that were meant to use due process procedures to harass plaintiff." Complaint at ¶ 70.

Salinas brings his procedural due process claim against the Individual Defendants in their individual capacity pursuant to 42 U.S.C. § 1983.  Section 1983 provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law.  *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir.1998).  In order to state a cause of action under

§ 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Id.*

Section 1983 claims against public officials in their individual capacities are subject to the defense of qualified immunity. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 338 (5th Cir. 2003). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341(1986)), *cert. denied*, 130 S.Ct. 3450 (2010).

The Individual Defendants argue that they are entitled to are entitled qualified immunity with regard to Salinas' procedural due process claim.[6]  When a state actor claims qualified immunity, a court must make two separate inquiries: "(1) whether the defendant's conduct violated a

---

[6]Surprisingly, Defendants have not argued in their Motion to Dismiss that the Individual Defendants are entitled to *absolute immunity* for performing "quasi-judicial" duties.  *See Butz v. Economou*, 438 U.S. 478, 512-513 (1978) (holding that executive branch officials, when participating in a federal administrative agency's adjudicative process, were entitled to absolute immunity because they performed functions comparable to those of judges and prosecutors); *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 636 (5th Cir. 2000) (holding that board members of Texas State Board of Dental Examiners performed quasi-judicial functions and were entitled to absolute immunity), *cert. denied*, 531 U.S. 871(2000); *O'Neal v. Mississippi Bd. of Nursing*, 113 F.3d 62, 67 (5th Cir. 1997) (holding that members of a state nursing board were entitled to absolute immunity because the board and its members performed quasi-judicial functions); *Tinsley v. Bundy,* 1993 WL 414754 at *3 (D. S.C. Jan. 13, 1993) (holding that hearing officers of state employment commission were entitled to absolute immunity from suit since they functioned as quasi-judicial officers).  However, because the Defendants did not raise the absolute immunity issue, the Court will not address it.

constitutional right, and (2) whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the violation." *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  Courts may decide the order in which they address the two prongs of the qualified immunity test "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.  When an official sued for damages under § 1983 raises the defense of qualified immunity, the plaintiff has the burden of rebutting the defense. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).

Thus, the Court will first determine whether Salinas' allegations can sustain a finding that the Defendants violated his constitutional rights. *Id.* "If not, no further inquiry is needed and the defendant is entitled to qualified immunity." *Id.*

### 1.    Was Salinas denied due process?

The Fourteenth Amendment prevents States from depriving citizens of property without due process of law. U.S. Const. Amend. XIV § 1.  To prevail on a procedural due process claim, a plaintiff must show that (1) he or she has a recognized property or liberty interest and (2) was deprived of that liberty or property interest without adequate notice or meaningful opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 332–35 (1976).  The Fifth Circuit has recognized that unemployment benefit claimants have a property interest in unemployment benefits that implicates the protections of due process.  *Rivers v. Cavazos,* 1995 WL 581851 at * 5 (5th Cir. Sept. 8, 1995). The question thus becomes whether Salinas was given adequate notice and an opportunity to be heard before the TWC ordered him to repay some the benefits he received.

"[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). The requirements of procedural due process are "flexible and call[ ] for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481

(1972).  At a minimum, due process requires that notice and an opportunity to be heard "be granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (citation and internal quotation marks omitted).  The ultimate requirements of due process are dependent on three factors:  First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Mathews*, 424 U.S. at 335.

Salinas has failed to show that he was denied procedural due process in this case.  There is no dispute that Salinas was notified of the TWC Determinations that Salinas owed the TWC $193.00 in overpaid unemployment benefits and that a hearing[7] was held before the TWC during which Salinas was given an opportunity to present his side of the case. Salinas was also given an opportunity to appeal the decision to the Appeal Tribunal and Commission, which he did. Exh. K to Complaint.  Salinas could have further appealed the Commission's decision, but chose not to do so, thereby making it the Final Decision of the TWC.  Commission Decision, Exh. K to Complaint (notifying Salinas he had until "June 23, 2011" to file an appeal).

Salinas' failure to file an appeal of the Commission's decision proves "fatal to [his] procedural due process claim." *Felder v. Hobby*, 1999 WL1067892 at * 7 (5th Cir. Oct. 20, 1999). Under Fifth Circuit precedent, a party complaining of a lack of due process is required to utilize available state court remedies before proceeding to court under § 1983.  *See e.g*, *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 519 (5th Cir. 1998) (holding that the plaintiff cannot complain that "her due process rights were violated when she skipped an available state remedy"); *Browning v. City of Odessa*, 990 F.2d 842, 845 n. 7 (5th Cir. 1993) (recognizing that the court "has consistently

---

[7] See Exh. A-24 to Complaint.

held that one who fails to take advantage of procedural safeguards available to him cannot later claim that he was denied due process"); *Rathjen v. Litchfield*, 878 F.2d 836, 839–40 (5th Cir. 1989) ("no denial of procedural due process occurs when a person has failed to utilize the state procedures available to him"); *Galloway v. Louisiana*, 817 F.2d 1154, 1158 (5th Cir. 1987) ("[a]n employee cannot ignore the process duly extended to him and later complain that he was not accorded due process" and thus finding no procedural due process violation).  See also, *Numrich v. Warner,* 2012 WL 6738544 at * 6 (D. Or. Dec. 31, 2012) (dismissing unemployment benefit claimant's procedural due process claim where he failed to request a hearing after he was denied benefits);  *Akuma v. New Jersey Comm'r of Dep't of Labor and Workforce Dev.*, 2008 WL 4308229 at * 2 (D. N.J. Sept. 17, 2008) (granting summary judgment on plaintiff's claim where he failed to take advantage of state's processes available to claimant's dissatisfied with state's determinations regarding eligibility for unemployment benefits). As the Fifth Circuit reasoned, "[the plaintiff] cannot skip an available state remedy and then argue that the deprivation by the state was the inadequacy or lack of the skipped remedy." *Myrick v. City of Dallas*, 810 F.2d 1382, 1388 (5th Cir. 1987).

Even if Salinas had appealed the Commission's decision, Salinas procedural due process claim would nevertheless fail because Salinas received all the process that was due in his case. Under the balancing test set forth in *Mathews v. Eldridge*, the TWC's provides sufficient process. While the private interests at issue are significant, the procedures adequately safeguard against the risk of erroneous deprivations, especially given the availability of numerous appeals and judicial review.  This scheme gives claimants sufficient notice and an opportunity to be heard prior to any deprivation, and it is difficult to determine any additional procedures that would further reduce this risk. *See Eldridge*, 424 U.S. at 332–35.  Accordingly, Salinas was not denied due process in this case. See *Tucker v. Caldwell*, 608 F.2d 140, 145 (5th Cir. 1979) (holding that unemployment benefits claimant, who conceded that she received notice and hearing on issue of overpayment of benefits,

was not denied due process because she did not have an additional special hearing before reducing her future benefits); *Numrich,* 2012 WL 6738544 at * 6 (finding that unemployment benefit claimant's allegations failed to state a plausible procedural due process violation where claimant received notice and an opportunity to be heard before he was ordered to refund certain benefits to the state).

Because Salinas has failed to allege a violation of a constitutional right, the Individual Defendants are entitled to qualified immunity with regard to his § 1983 claim. Accordingly, the Court recommends that Salinas' due process claim and request for a declaratory judgment should be dismissed for failure to state a claim under Rule 12(b)(6).

## D.     State Claims

In addition to his federal due process claim, Salinas also alleges state law claims of conspiracy, intentional infliction of emotional distress and negligence per se against the Individual Defendants in their individual capacity in this case. 28 U.S.C. § 1367(c)(3) grants district court's the discretion to retain or decline supplemental jurisdiction over a plaintiff's state law claims once it has dismissed all claims over which it has original jurisdiction. While this Court has the authority and discretion to hear Salinas' state law claims, the United States Supreme Court instructs that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); see also, *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims."). Accordingly, the Magistrate Court recommends that the District Court dismiss Salinas' remaining state law claims *without prejudice*. *See Bass*, 180 F.3d at 246 ("the dismissal of

the pendent claims should expressly be *without prejudice* so that the plaintiff may refile his claims in the appropriate state court.") (emphasis in original).[8]

## IV.  Recommendation

Based upon the foregoing, the Magistrate Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss (Dkt. # 15).  Pursuant to Federal Rule of Civil Procedure 12(b)(1), the undersigned **RECOMMENDS** that the District Court **DISMISS** Salinas' claims against the Texas Workforce Commission and the Individual Defendants in their Official Capacity, as barred by the Eleventh Amendment.  The Court **FURTHER RECOMMENDS** that the District Court **DISMISS WITH PREJUDICE** Salinas' federal claims against the Individual Defendants in their Individual Capacity based on qualified immunity pursuant to Federal Rule of Civil Procedure 12(b)(6).   Finally, the Court **RECOMMENDS** that the District Court **DISMISS WITHOUT PREJUDICE** Salinas' state law claims against the Individual Defendants in their Individual Capacity pursuant to 28 U.S.C. § 1367(c)(3).

## V.  Warnings

The parties may file objections to this Report and Recommendation.   A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

---

[8]Because the Court recommends dismissal of the Defendants on alternate grounds, the Court need not address the Defendants' service of process and standing arguments.

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 22nd day of August, 2013.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE